# Staunton.

## TURNER-JENNINGS MOTOR COMPANY, INC., ET AL., V. BECKLEY'S ADMINISTRATOR.

### September 20, 1923.

1. LANDLORD AND TENANT—*Assignment—Secret Agreement between Assignor and Lessor for Benefit of Assignor—Case at Bar.*—A lessee of a garage agreed to assign his lease to a corporation to be formed to take over his business. The lessor at first agreed to the assignment of the lease, but afterwards at the instance of the lessee refused to assent to an assignment unless the rent was increased from $175.00 to $225.00 a month. Accordingly, a new lease was executed to the lessee at a rental of $225.00 a month, and by another instrument executed on the same day the lessor agreed to allow the lessee $50.00 per month should he sublet the property to some one else. The lessee then assigned the lease in accordance with his previous agreement and the assignee subsequently paid the rental of $225.00 per month.

   *Held:* That upon a sound interpretation of the two papers executed at the same time, in the light of the lessee's relationship to all the parties, the lessee took a lease from the lessor for $175.00 per month, and transferred that lease to the assignee, who proceeded to overpay the lessor the sum of $550.00, and that fund not being claimed in any way by the lessor, the right to recover it clearly followed, and that right belonged to the assignee, as it alone had made the excess payments, and not to the administrator of the lessee.

2. LANDLORD AND TENANT—*Assignment—Overpayment of Rent by Assignee—Waiver by Assignee of Right to Recover—Case at Bar.*—In the instant case it was contended that the assignee of a lease waived the right to recover back overpayments to the lessor, induced by a secret agreement between the lessor and the assignor, by making payments after discovery of the secret agreement.

   *Held:* That there was no force in this contention, as the overpayments were made with the understanding on the part of the lessor that the same should not prejudice the right of the assignee to recover back the amount paid.

Error to a judgment of the Court of Law and Chancery of the city of Roanoke, in a proceeding by motion

for a judgment for money. Judgment for plaintiff.
Defendant assigns error.

*Reversed.*

The opinion states the case.

*Jas. D. Johnston* and *Hall, Wingfield & Apperson,* for
the plaintiffs in error.

*Jackson & Henson,* for the defendant in error.

Kelly, P., delivered the opinion of the court.

In attempting to make a satisfactory statement of
this case, it seems best to begin by setting forth in full
the notice by which the proceeding was instituted,
which is as follows:

"To the Central Manufacturing Company, a corpora-
tion:

"You will please take notice that the undersigned,
Milton Beckley, administrator of C. J. Beckley, de-
ceased, will on the 7th day of January, 1920, move the
Court of Law and Chancery of the city of Roanoke,
Virginia, for a judgment against you for the sum of
$550.00, due by you to the undersigned as administrator
of C. J. Beckley, deceased, by reason of the following
facts:

"On January 3, 1919, you executed to the late C. J.
Beckley a contract which was signed by you and C. L.
Beckley, which was in the words and figures following,
to-wit:

" 'January 3, 1919.

" 'Mr. C. J. Beckley,
    "Roanoke, Va.
"Dear Sir:
"This is to confirm verbal agreement made with you
this p. m. by which we have agreed to lease to you for

a period of three and a half years from January 1, 1919, the garage building you now occupy on the south side of Luck avenue between Henry and Commerce streets, at a rental of $225.00 per month, payable at the end of each month.

" 'You are to have the privilege of assigning or subleasing said property to other parties should you desire, provided it is for the same line of business, or something similar, by which the insurance on said building would not be increased.

" 'Yours very truly, .
" 'CENTRAL MANUFACTURING CO.,
(Signed)     " 'R. H. Angell,
" 'President.

" 'I hereby accept and confirm the above agreement.
(Signed)     " 'C. J. Beckley.'

"And on the same day you, by R. H. Angell, your president, executed to the said C. J. Beckley another paper referring to the former paper, which is in the words and figures following, to-wit:

" 'Roanoke, Va., January 3, 1919.
" 'C. J. Beckley,
" 'City.
" 'Dear Sir:
" 'Referring to change in lease of garage building made today, we will allow you $50.00 per month as the money is paid to us should you sub-lease the property to some one else.

" 'Yours truly,
(Signed)     " 'R. H. Angell,
" 'President.'

"The late C. J. Beckley in his lifetime assigned and transferred this lease to John B. Guernsey & Company,

who assumed the payment of the $225.00 per month mentioned in the lease, who, in turn, assigned and transferred it to the Turner-Jennings Motor Company, mentioned in the lease. I allege that you have collected the full price of $225.00 per month from the said Turner-Jennings Motor Company from January 3, 1919, to January 1, 1920; that you neither paid to C. J. Beckley in his lifetime nor the undersigned the said sum of $50.00 per month, which you agreed to pay as per contract, hereinbefore referred to, although often demanded; and that by reason of said contract, and by reason of your having collected said sum of $225.00 per month, that you are indebted to the undersigned, as administrator of C. J. Beckley, in the sum of $............... being the amount demanded of you in this notice, and for which I will ask judgment.

"Since the execution of said contract, the said C. J. Beckley has departed this life and the undersigned, Milton Beckley, has qualified as administrator, as shown by a certified copy of the order appointing him as administrator, herewith attached to this notice, marked 'Exhibit 1.'

> "Respectfully,
> "MILTON BECKLEY,
> "Administrator of C. J. Beckley, deceased."

To this notice the defendant, Central Manufacturing Company, filed an affidavit pursuant to section 2998 of the Code of 1904 (section 6151 Code 1919), stating that it "claims no interest in the $550.00, which is the subject matter of said suit, but that the Turner-Jennings Motor Company, Incorporated, and John B. Guernsey and Company, Incorporated, have a claim thereto, and that the Central Manufacturing Company, Incorporated

does not collude with the said Turner-Jennings Motor Company, Incorporated, and the said John B. Guernsey and Company, Incorporated, and that it is ready to pay or dispose of the said sum as the court may direct."

Thereupon the trial court ordered that the Turner-Jennings Motor Company, Incorporated, and the John B. Guernsey Company, Incorporated, should appear and state the nature of their claim to the fund mentioned in the notice.

Guernsey and Company and the Turner-Jennings Motor Company having been duly notified of the foregoing order, appeared and filed (in addition to two special pleas not now relied upon) a statement of the nature of their claim in which the following material facts are alleged, and the truth of which is admitted by the demurrer hereinafter mentioned:

The plaintiff's intestate, C. J. Beckley, had been engaged in the garage business in Roanoke. He needed additional capital in the business and requested John B. Guernsey, of John B. Guernsey and Company, Incorporated, to provide such capital. This request and the negotiations following upon it resulted in an arrangement whereby it was agreed that John B. Guernsey and Company, Incorporated, would advance certain money to be invested in the business; that a corporation should be organized to take over the business; that John B. Guernsey and Company would purchase from Beckley the equipment owned by him at a cash price of $1,200.00; that this equipment was in turn to be transferred to the proposed new operating corporation for one-half of its capital stock, and that Beckley (presumably for the other half of the capital stock) would transfer to that corporation all the other assets owned or used by him in connection with the business, including good will, and also including in particular the

lease from the Central Manufacturing Company on the premises in which the business was being conducted. Furthermore, John B. Guernsey and Company were to advance to the proposed operating corporation the sum of $2,000.00 to be secured by deed of trust on all the assets of the company. A charter was accordingly procured for the proposed corporation (under the name of Turner-Jennings Motor Company, Incorporated), and prior to its organization John B. Guernsey and Company had paid to Beckley for use in connection with the enterprise about the sum of $4,200.00. When the meeting was held for the purpose of organizing the Turner-Jennings Motor Company, Beckley exhibited his lease from the Central Manufacturing Company for the garage building, and that paper contained a provision prohibiting its assignment or transfer. Thereupon John B. Guernsey and Company requested the Central Manufacturing Company to consent to an assignment, and the latter company consented, provided the assignee should be a reliable party.

Upon being informed that the Central Manufacturing Company was willing to give its consent, Beckley refused to make the assignment. Repeated efforts were made to induce him to carry out his previous agreement with respect to the assignment of the lease, but without avail, and a suit was then brought for the purpose of compelling him to perform his agreement. While this suit was pending Beckley made a proposition of compromise to John B. Guernsey and Company, and in connection therewith it is alleged that in order to secure to Beckley a secret profit from the transfer of the lease he and the Central Manufacturing Company, without the knowledge of John B. Guernsey and Company, Incorporated, entered into a sort of conspiracy as a result of which the Central Manufacturing Company refused

to assent to an assignment of the lease unless the rent was increased to $225.00 per month, it being understood, however, that if the assignment was actually made, Beckley should receive $50.00 per month out of the rent.

John B. Guernsey and Company, Incorporated, relying upon the statement of Beckley that the lease would cost $225.00 per month, entered into a contract with him whereby in consideration of $1,000 and the release of Beckley from any liability arising out of his failure to perform his former contract of assignment, the latter assigned to Guernsey and Company all of his right, title and interest in the garage business including all his rights under the lease on the premises in which said business was being conducted.

Subsequently, John B. Guernsey and Company, Incorporated, assigned and transferred the lease and all property used in connection with the garage business to Turner-Jennings Motor Company, Incorporated, and that company occupied the premises from the 9th of February, 1919, to the time of the institution of this suit, and paid the rental claimed by the Central Manufacturing Company of $225.00 per month for the use of the premises, with the understanding on the part of the Central Manufacturing Company that such payment should not prejudice the right of Turner-Jennings Motor Company or of John B. Guernsey and Company, Incorporated, to recover $50.00 per month of the amount so paid.

The statement of the claim from which the foregoing facts have been taken was amended or amplified by a subsequent paper filed in the cause, in which the writings set forth in the notice and also the assignment from Beckley to the Guernsey Company and from the Guernsey Company to the Turner-Jennings Motor Company were incorporated.

To the statement of claim made by Turner-Jennings Motor Company and John B. Guernsey and Company, the plaintiff, Beckley's administrator, demurred. The court sustained the demurrer and entered a judgment in favor of the administrator against the Central Manufacturing Company for the sum of $550.00. To that judgment this writ of error was awarded.

We have stated the facts, as alleged in the statement of claim at considerable length in order to set out fully the relationship of the parties and the history of the transaction out of which this litigation arose. Upon these facts, which, of course, were admitted to be true by the demurrer, there can be, as it seems to us, no fair difference of opinion as to the substantial merits of the case. It would be clearly contrary to equity and good conscience for Beckley or his estate to be allowed to recover the fund in question.

The appellants seek to recover upon two alternative theories or views of the case, first, that the fund in controversy came into existence by virtue of a fraudulent conspiracy between Beckley and the Central Manufacturing Company, and that by reason of such conspiracy the appellants are entitled to recover the fund in controversy, and, second, that the two papers dated January 3, 1919, addressed to Beckley and signed by R. H. Angell, president, set forth in full in the notice, must be construed together and treated as one entire contract, whereby Beckley leased the garage building for $175.00 per month, and that it was such a lease, and not a lease for $225.00 a month, which Beckley assigned to Guernsey and Company.

The alleged facts would seem to entitle the appellant, Turner-Jennings Motor Company, in appropriate proceedings, to recover the fund in controversy under either of these two aspects or theories of the case. In view of

the somewhat technical nature of an interpleader proceeding, some difficulties which are pointed out very forcibly by counsel for the appellee might be encountered if we should undertake to rest our decision in this case upon the theory that the appellants are entitled to recover on the ground of fraud.

[1] In our opinion, however, upon a sound interpretation of the two papers executed on January 3, 1919, to Beckley, in the light of his relationship to all the parties and of his then proposed and subsequently perfected assignment to John B. Guernsey and Company, he took a lease from the Central Manufacturing Company for $175.00 per month and transferred that lease to Guernsey and Company. This lease was subsequently assigned by Guernsey and Company to the Turner-Jennings Motor Company, which proceeded to overpay the Central Manufacturing Company the sum of $550.00. That fund is not claimed in any way by the Central Manufacturing Company, which admits that it owes the money under the contract either to the estate of Beckley or to the appellants. In this view of the case, the right to recover the fund in this proceeding clearly follows. *Runkle* v. *Runkle*, 112 Va. 788, 72 S. E. 695; Lile's Equity Jurisprudence (1921), pages 249-251. The right of recovery, as it seems to us, belongs to the Turner-Jennings Motor Company, as that company alone has made the excess payments for rent.

[2] It is said that the appellants waived the right to recover back the fund involved in this suit by making payments after discovery of the secret agreement between the Central Manufacturing Company and C. J. Beckley, but this contention is met and disposed of by the allegations in the statement of the claim that such payment was made with the understanding on the part of the Central Manufacturing Company that the same

should not prejudice the right of the appellants to recover back the amount.

The judgment complained of must be reversed and the cause remanded for further proceedings to be had not in conflict with the views herein expressed.

*Reversed.*